# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PHYLLIS J. KENNEDY, | : | |
| Plaintiff, | : | |
| | | Case No. 3:15cv00059 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

The parties in this social security case agree that a remand to the Social Security Administration is warranted.  They disagree, however, on whether the remand should be for an award of benefits in Plaintiff's favor or whether further administrative proceedings are needed.  Their dispute arises in the Commissioner's Motion to Remand (Doc. #11) and Plaintiff's Memorandum in Opposition (Doc. #12).  The undersigned has also reviewed Plaintiff's Statement of Errors (Doc. #7) and the more than 1,500 page administrative record.

The parties take opposing positions over whether the procedural history of the case justifies a remand for benefits or further proceedings.  The Commissioner states, "The

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

complex nature of this case frames the Commissioner's request for remand." (Doc. #11, *PageID* #66).  The Commissioner explains that the procedural history has involved Plaintiff's 2 applications for benefits (2002 and 2008), 3 district court decisions (2007-remand, 2009-remand, and 2011-affirm), and a decision by the U.S. Court of Appeals for the Sixth Circuit that led to the most recent remand, *Kennedy v. Comm'r of Soc. Sec.*, 535 Fed. App'x 515 (6th Cir. 2013).  "While the ALJ made errors in articulation, those errors should be addressed through remand and a new decision," according to the Commissioner.  (Doc. #11, *PageID* #67).

      Plaintiff points out:

> [She] has been alleging disability and seeking benefits from the Social Security Administration in excess of thirteen years.  (Tr. 156-59).  She has appeared a five separate administrative hearings (Tr. 38-49, 609-53, 1181-[1]220, 1221-53, & 1373).  Her claim has been remanded to the Social Security Administration from this Court on two separate occasions and once from the Sixth Circuit Court of Appeals.  (Tr. 416-36, 688-711, & 1354-58).  She has already been awarded disability benefits as of December 12, 2012 secondary to how much she has aged while this claim has been pending and her shifting place in the Commissioner's Medical Vocational Guidelines.  (Tr. 1353-54).  The only remaining issue in this case is then her disability status for the period from February 16, 2001 through December 30, 2012, which opened well over a decade ago and which has been closed for nearly three years....

(Doc. #12, *PageID* #74).  Plaintiff thus argues that a remand for a sixth administrative hearing before a fourth Administrative Law Judge is unreasonable under the procedural history of the case.

      The parties also divergently view the evidence of record.  The Commissioner's counsel acknowledges – to her credit – that the ALJ erred by not providing sufficient

2

explanation for the weight given to medical opinions and by not discussing certain evidence identified by the Court of Appeals.  She contends, however, that a remand for further proceedings is warranted because all the factual issues have not been resolved and because proof of Plaintiff's  disability, before age 55, is not overwhelming and there is evidence contrary to a finding of disability.  Plaintiff contends that a judicial award of benefits is appropriate secondary to the overwhelming evidence of Plaintiff's disability and the weak contrary evidence.

Under sentence 4 of  42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041.  "Generally, benefits may be awarded immediately 'only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.'"  *Kalmbach v. Comm'r of Soc. Sec.,* 409 Fed. App'x 852, 865 (6th Cir. 2011) (quoting, in part, *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).  "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking."  *Faucher*, 17 F.3d at 176.  Although the use of the word "only" in the previous sentence appears to restrict a remand for benefits to those 2 evidentiary situations, the Sixth Circuit has suggested that a third possible situation might

3

warrant a remand for benefits.  "[A] court may directly award benefits, rather than remanding for proper consideration by the ALJ, where the record is complete and the Commissioner's decision is clearly erroneous ...." *Karger v. Comm'r of Soc. Sec.*, 414 Fed. App'x 739, 755 (6th Cir. 2011) (discussing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985) (other citation omitted)).

Review of the evidence of record, including the medical records discussed by the parties and the ALJ (Tr. 1336-52), reveals the presence of strong evidence that Plaintiff was under a benefits-qualifying disability during the closed period presently at issue, before Plaintiff turned age 55, while contrary evidence is lacking.  The strong evidence includes opinions presented by Plaintiff's treating medical sources, most notably Dr. Gamm, Dr. Dunlap, and Dr. Franer, and consulting physician Dr. O'Connell.

Treating physician Dr. Gamm completed a medical report on July 1, 2001 opining Plaintiff should work no more than 4 hours per day, 12 hours per week and engage in "no strenuous activities."  (Tr. 343).  He initially felt that these restrictions were to be temporary. *Id*.  He indicated that she could lift a maximum of 10 pounds.  *Id*.  Dr. Gamm opined that Plaintiff could not use her right upper extremity for repetitive actions such as simple grasping and pushing/pulling of arm controls.  *Id*.  Later, in October 2001 and early 2002, Dr. Gamm prepared two additional and similarly restrictive reports.  (Tr. 342, 344).  The last report in early 2002 stated that Plaintiff's restrictions were to be permanent.  (Tr. 342).

On January 21, 2003, treating physician Dr. Dunlap completed a Medical Assessment

4

of Physical Ability To Do Work-Related Activities.  (Tr. 377-380A).  He opined that Plaintiff was limited to total standing, walking, and sitting of 6 hours per day. (Tr. 378).  He also opined she would be limited to lifting a maximum of 10 pounds occasionally and 5 pounds frequently. *Id*. He concluded by opining that Plaintiff was not capable of full time work at any exertional level. (Tr. 380A).

On September 5, 2007, Dr. Dunlap completed a Medical Assessment of Physical Ability To Do Work-Related Activities on September 5, 2007.  (Tr. 596-600).  He opined that Plaintiff was limited to lifting no more than 10 pounds.  (Tr. 597).  He limited her to 3 hours of standing/walking total in an 8-hour work day and no more than 3 hours of sitting total in an 8-hour work day.  This effectively limited Plaintiff to part-time work.  *Id*.  Dr. Dunlap prepared a narrative report on September 6, 2007.  (Tr. 594-95).  In his report, he relied on objective findings to support his opinions.  He noted that physical examination revealed a marked, diminished range of motion about the cervical spine, mild diminished motion about the dorsal spine, and moderate diminished range of motion about the lumbar spine.  (Tr. 594).  He noted muscle spasms about the entire spinal areas including the sacrum.  *Id*.  He concluded his report stating, "Prognosis is poor in this patient as her symptoms have progressed and she is showing another area of moderate foraminal stenosis at C4-5."  (Tr. 595).  On July 2, 2008, Dr. Dunlap completed a Basic Medical Form for the Ohio Department of Job and Family Services.  He opined that Plaintiff was unemployable for 12 months.  (Tr. 1041).

5

Treating physician Dr. Franer completed a Mental Functional Capacity Assessment on May 14, 2009. (Tr. 1040-42). She opined that Plaintiff was unemployable and had moderate limitations in several areas. *Id*. Some of these areas include: attention and concentration; maintaining a set schedule; working at a consistent pace without needing frequent breaks; and inability to work with others. *Id*.

At the request of counsel, Dr. O'Connell evaluated Plaintiff on January 1, 2004. ( Tr. 382-91). Physical examination revealed clubbing of fingers and bilateral upper extremities. (Tr. 388). Musculoskeletal exam revealed in the erect posture to be downward tilt of PSIS (post-superior iliac spine) on the right with lateral curve changes involving thoracic and lumbar spine convex to the right. *Id*. Plaintiff could not heel to toe walk or squat or rise from squat. *Id*. Her lumbar flexion, cervical range of motion, and thoracic flexion were all reduced. *Id*. Her affect was flat, fatigued, and reluctantly cooperative. *Id*. She has a scar from a previous surgery from C4 through T5, which was well healed with pain with palpation along the scar. *Id*. Fibrosis of the cervical thoracic paravertebrals was noted. *Id*. Dr. O'Connell diagnosed Plaintiff as having cervical spondylosis with degenerative disc disease, status post-cervical fusion for correction of fractured vertebrae, lumbar spondylosis, and hepatomegaly. Dr. O'Connell concluded:

> This patient has had significant interventions to try to correct her pain in her upper extremities into her arms. This has not been successful and her treating physician Dr. Gamm placed her on restrictions that have not been lifted since 5-21-01. It is well documented in her medical record that she has not favorably responded to traditional as well as nontraditional interventions. Because of this her prognosis is poor. It is my medical opinion based upon

> history, physical examination and review of the medical records that this
> patient suffers from a combination of impairments that prevent Plaintiff from
> performing substantial gainful activity on more than a part-time basis. It is my
> medical opinion that this patient is limited to working no more than 4 hours a
> day or 12 hours a week which are restrictions which have been in place since
> 5-21-01. I feel that these restrictions are reasonable and appropriate for the
> patient's condition. It is my medical opinion that this disability has been
> present since 5-21-01 and is reasonably expected to last the rest of her life.

(Tr. 391). On January 22, 2004, Dr. O'Connell completed a Medical Assessment of Physical Ability To Do Work-Related Activities. (Tr. 382-386). She limited Plaintiff to lifting a maximum of 10 pounds. (Tr. 383). She did not feel Plaintiff was capable of work at any exertional level. (Tr. 386). At most, she felt Plaintiff would be limited to part-time work, no more than 6 hours per day. (Tr. 383). This is slightly different than her opinion in the body of her report, wherein she states 4 hours per day. (Tr. 391). However, both would restrictions would limit Plaintiff to part-time employment.

In addition to the above strong evidence of Plaintiff's disability before turning age 55, the record contains the treatment notes of Dr. Franer and Dr. Dunlap as well as objective evidence. Plaintiff's counsel accurately described this evidence at length in the Statement of Errors and there is no meaningful purpose in reiterating her descriptions here. *See* Doc. # 7, *PageID* #s 39-45. It is enough to observe that this evidence further bolsters the treating source's opinions and Dr. O'Connell's opinions.

The Commissioner is correct, up to a point, to rely on evidence in the record that tends to be contrary to the conclusion that Plaintiff was under a disability. Such evidence includes, but is not limited to, the opinions provided by non-treating medical sources. *See*

7

Doc. #11, *PageID* #s 67-70.  Review of that evidence, however, reveals that it is minimally probative, particularly when compared to the strong evidence presented by the treating sources and consulting physician Dr. O'Connell plus the objective evidence that support or is consistent with their opinions.

In sum, this is an unusual case considering its age – more than 13 years – together with the flawed non-disability decisions by 3 different ALJs, which necessitated repeated remand Orders by this Court and a remand Order by the U.S. Court of Appeals for the Sixth Circuit.  In these circumstances, and in light of the fact that, as Plaintiff states, the period at issue has been closed for almost 3 years, and in light of the strong evidence of record while contrary evidence is lacking, there is no just reason to further delay this matter ad infinitum for even more administrative procedures.  *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 730 (6th Cir. 2014) (remanding for benefits after 2 remands and 3 administrative hearings and finding, "In light of the extensive opinions of treating physicians as to the severity of Gentry's psoriasis and psoriatic arthritis, we conclude that substantial evidence on the record as a whole supports a finding of total disability."); *see also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." (other citation omitted)); *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998) ("Given the obduracy evidenced by the action of the administrative agency on remand, we remand the case to the agency with directions that the application for benefits be granted.");

*Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) ("Because of the medical record, we think it unconscionable to remand this eight year old case to the Secretary for further review.").

Accordingly, a reversal of the ALJ's decision and a judicial award of benefits are warranted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's Motion to Remand (Doc. #11) be GRANTED, in part, as to the requested remand to the Social Security Administration, and DENIED, in part, as to the request for further administrative proceedings;

2. The Commissioner's non-disability finding be reversed;

3. This matter be remanded to the Social Security Administration under Sentence 4 of 42 U.S.C. §405(g) for payment of benefits regarding Plaintiff Phyllis J. Kennedy's consolidated applications and benefits be awarded to Kennedy for the remaining period at issue in those applications; and

4. The case be terminated on the docket of this Court.

January 13, 2016

             s/Sharon L. Ovington
             Sharon L. Ovington
             Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).